UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>MICHAEL R. DEPPE, )<br>      Defendant, )<br>) | CRIMINAL ACTION<br>NO. 05-40007-FDS |

**MEMORANDUM AND ORDER ON PRETRIAL SERVICES' PETITION FOR
REVOCATION OF MICHAEL R. DEPPE'S RELEASE ON CONDITIONS**
**December 5, 2005**

**SWARTWOOD, C.M.J.**

I. Background

On February 7, 2005, Michael R. Deppe ("Mr. Deppe") was arrested within the Middle District of Florida in connection with a Criminal Complaint filed in this Court on February 4, 2005, charging him with wire fraud in violation of 18 U.S.C. §1343.

At Mr. Deppe's initial appearance in the Middle District of Florida, he waived his right to an identity hearing, his right to a preliminary examination in the arresting District and reserved his right for a probable cause and detention hearing in the charging District (MA).

On February 23, 2005, an Indictment was returned charging Mr. Deppe with mail and wire fraud. The fraudulent schemes charged in the Indictment involved Mr. Deppe's use of the internet and EBay[1].

On March 3, 2005, a detention hearing was held and following that hearing, over strenuous objection of the Government, I released Mr. Deppe on the following relevant conditions:

1. The Defendant shall not commit any offense in violation of Federal, State or Local laws while on release in this case

. . .

(e) Actively seek employment and submit to Pretrial Services all attempts to secure employment as directed;

. . .

(x) No sales jobs except for a legitimate employer and in that case, only in-person sales. Any sales position should be first approved by Pretrial Services;

(w) No access to or use of any computer. No computer in residence;

. . .

---

[1] On March 30, 2005, a Superseding Indictment was returned charging Mr. Deppe with additional fraudulent schemes.

On September 14, 2005, Vangie Cuascut, the Pretrial Services Officer assigned to supervise Mr. Deppe while on release, filed a Memorandum advising the Court that Mr. Deppe had not obtained employment. On that same date, I instructed the Pretrial Services Officer as follows: "Contact Mr. Deppe's counsel and have him instruct his client that <u>finding</u> a job is a condition of his release. No job. Then maybe he should be revoked."

On November 28, 2005, Ms. Cuascut filed a Petition requesting revocation of Mr. Deppe's release on the grounds that he had lied to her concerning his employment, had failed to obtain employment as required, was involved in a fraudulent criminal scheme while on release and committed a criminal offense (gambling) while on release.

On November 29, 2005, Mr. Deppe was arrested and later that day and again on November 30, 2005, a revocation hearing was held.

## II. <u>Findings of Fact</u>

### A. <u>Employment</u>

Following Mr. Deppe's release on March 3, 2005, he worked at a Buick GMC automobile agency from March 9 to April 8, 2005.

Mr. Deppe then went to work for Lexus Marlborough on April 23, 2005 and was fired that same day. Mr. Deppe worked for Chambers Motors in Somerville, Massachusetts from May 7 to June 3, 2005.

Mr. Deppe alleges that he lost each of the above jobs as a result of his employers discovering that he has been charged in this Court with multiple counts of wire and mail fraud.

Mr. Deppe was unemployed for the balance of June, all of July, August and September.  After my admonition on September 14, 2005 (instructing Mr. Deppe to find employment), Mr. Deppe reported to Ms. Cuascut that he had found employment at Concord Chrysler & Jeep, in Concord, Massachusetts, starting on October 13, 2005.  Ms. Cuascut requested documentation concerning Mr. Deppe's employment.  Mr. Deppe failed to provide any documentation.  On November 18, 2005, Mr. Deppe informed Ms. Cuascut that he had quit his job because of slow sales.

Pretrial Services Officer Cuascut thereafter called the Concord Chrysler & Jeep where she spoke with the woman in charge of human resources/payroll and was advised by that person that no one by the name of Michael Deppe was or had been an employee of Concord Chrysler & Jeep.  At the conclusion of the first day of the revocation hearing, Mr. Deppe's counsel stated that Mr. Deppe, in fact, had worked for Mike Vooler, the sales manager at Concord Chrysler & Jeep.  On my instructions, Ms. Cuascut called Mr. Vooler, who stated that sometime in October, he had interviewed Mr. Deppe for a sales persons' position, that he had some misgivings about Mr. Deppe, but that he offered him a position with the requirement that he come into the agency on the following Saturday to observe how business was conducted and that he would start work on the following Monday.  Mr. Vooler further stated that Mr. Deppe neither showed up on Saturday or Monday.  Two or three weeks after Mr. Deppe failed to show for work, Mr. Deppe called Mr. Vooler

again seeking employment. Mr. Vooler told Mr. Deppe that he would call him if he needed help, but told Ms. Cuascut that he had no intention of calling Mr. Deppe.

Mr. Deppe's counsel also stated that Mr. Deppe had worked for four days in November at Imperial Chrysler in Mendon, Massachusetts and that he had obtained that position through Jeff Viggeur, an automobile employment agent. Ms. Cuascut contacted Mr. Viggeur and was informed by him that Mr. Deppe had attended a one-day class conducted by Mr. Viggeur, that Mr. Deppe had been referred to Imperial Chrysler in Mendon for employment, that Mr. Deppe reported for work one day and left at the end of the day.

### B.   Further Fraudulent Schemes

U.S. Postal Inspector Michael A. Blanchard has conducted a thorough investigation of an alleged further fraudulent scheme promoted by Mr. Deppe. Govt. Ex. 1. This alleged new fraudulent scheme involved use of the internet and EBay and was very similar to the fraudulent schemes alleged against Mr. Deppe in the Indictment. The new fraudulent scheme involved contacting unsuccessful bidders on EBay for Chevrolet, Corvette Z06s. These unsuccessful bidders were contacted through the internet and offered a Corvette Z06. A telephone number was included with the initial e-mail soliciting a sale of a Corvette Z06. There is no evidence that Mr. Deppe actually sent the internet communication to these potential Corvette Z06 buyers. However, when three of these potential buyers called the telephone number contained in the

initial e-mail communication, all three spoke directly with Mr. Deppe. Mr. Deppe then consummated a deal with each of the three individuals for the sale of a Corvette Z06 which he stated would be delivered in one month. The price to be paid was the amount of a deposit that Mr. Deppe had put down for the purchase of these automobiles, plus a commission of $3,000 or $4,000. Each of the potential buyers were instructed to make payment through PayPal. One buyer in Colorado checked Mr. Deppe's background and after discovering that Mr. Deppe had been charged with similar fraudulent schemes in this Court, refused to pay any money for the purchase of a Corvette Z06. However, another purchaser, in Colorado, paid $6,090 as instructed by Mr. Deppe for the purchase of a Corvette Z06. The automobile was never delivered as promised by Mr. Deppe. This potential purchaser eventually was reimbursed by his credit card company which then sought reimbursement from PayPal. Def's Ex. B.

Another purchaser in California paid $7,500 to PayPal on instructions from Mr. Deppe and never received the Corvette Z06 as promised by Mr. Deppe. That purchaser was reimbursed by his credit card company. Id.

### C. Use Of Computer

While Mr. Deppe was on release, Mr. Deppe's wife purchased their present residence at 19 Old Stow Road in Hudson, Massachusetts. The total purchase price for this property was $695,000 which was paid by a first and second mortgage of that same

amount.  Mr. Deppe accompanied his wife to the mortgage company in Worcester, Massachusetts and while they were at that location, the mortgage officer observed Mr. Deppe using his company's computer.

### D.  Criminal Offense-Gambling

On August 25, 2005, Mr. Deppe went to the Hudson Police Department to file a complaint that he was being threatened by an individual who was attempting to collect a gambling debt.  Mr. Deppe told a Hudson Police Officer that from July 21 through July 24, 2005, he had placed twelve bets of varying types on baseball games with this individual.  Mr. Deppe further stated that this individual was attempting to collect $107,000 he claimed Mr. Deppe owed this individual's bookie and Mr. Deppe claimed that he only owes Mr. Marks and/or his bookie $70,000.

### III.  Discussion

Section 3148(b) provides that the judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

(1) finds that there is –

    (A) probable cause to believe that the person has committed a Federal, State or local crime while on release; or

    (B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that –

    (A) based on the factors set forth in §3142(g) of this Title, there is no condition of combination of conditions of

          release that will assure that the person will not flee or pose a danger to the safety of any other person in the community; or

  (B)  the person is unlikely to abide by any condition or combination of conditions of release.

In this case, the Government asserts that Mr. Deppe's conditions of release should be revoked on the grounds that there is probable cause to believe that he has committed a criminal offense (gambling) while on release and clear and convincing evidence that he has violated other conditions of his release (lying to Pretrial Services; failure to obtain employment; use of a computer; and engaging in a fraudulent scheme which very well may be a criminal offense).

    A.   <u>Whether Mr. Deppe Violated His Conditions of Release</u>

I find that there exists probable cause to believe that Mr. Deppe committed a crime while on release. By Mr. Deppe's own admission, during July he was involved with illegal gambling. Secondly, I find by clear and convincing evidence that Mr. Deppe lied to Pretrial Services about his employment, failed to obtain employment as required by his conditions of release, used a computer in violation of his conditions of release and was directly involved in a fraudulent scheme involving the sale of Corvette Z06s. Mr. Deppe's counsel argues that since the two individuals had been reimbursed by their credit card companies or PayPal, they had not been defrauded. That argument overlooks two obvious facts:

first, I am not concerned as to the success of the fraudulent scheme as I am with the fact that Mr. Deppe was involved in the scheme and second, it is no less a fraudulent scheme because the individuals were reimbursed for their losses. The fact remains that the credit card companies and/or PayPal are out over $13,000 as a result of this fraudulent scheme and are, therefore victims.

### B. Whether Detention Is Warranted

Since I have found that Mr. Deppe has committed a criminal offense while on release, a rebuttable presumption arises that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community if he were released. I find that Mr. Deppe has failed to rebut the presumption. Nevertheless, I will examine whether, in accordance with Section 3142, there are any conditions or combination of conditions that will assure the safety of the community and Mr. Deppe's appearance in this Court.

I originally released Mr. Deppe on conditions over the strenuous objection of the Government and against the recommendation of Ms. Cuascut. At that time, I told Mr. Deppe that: "a lot of these people are still going to [b]e involved in your case and they're going to be watching you, and they're going to be watching like hawks because they don't agree with what I'm going to do, and they're going to prove me wrong most likely by watching you, and if you make one slip and you're going to be back in here, no joke, you - Mr. Rappaport can get up and he can say

whatever he wants, but I can tell you the chances of you going back to Wyatt are very strong if you violate any of the conditions that I'm going to impose for your release." Tr. Det. Hearing, 3/3/05 (Docket No. 34, p.63).

Mr. Deppe obviously ignored that admonition by lying to Pretrial Services, refusing to obtain employment, using a computer, being involved in a fraudulent scheme that was the mirror image of several of the schemes for which he has been charged in this Indictment and getting involved with illegal gambling. Under these circumstances, I find that if Mr. Deppe were released, he is unlikely to abide by any conditions which I could impose for his release. Therefore, I am revoking Mr. Deppe's conditions of release and am ordering him detained.

## V. Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Mr. Deppe be committed to the custody of the Attorney General, or her designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Mr. Deppe be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the

corrections facility in which Mr. Deppe is detained and confined shall deliver Mr. Deppe to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

## RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE