UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>) Case No. 05-40007-FDS<br>v. )<br>)<br>MICHAEL R. DEPPE, )<br>)<br>Defendant. )<br>) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELIEF FROM PREJUDICIAL JOINDER

Because the two portions of the defendant's internet auction fraud scheme are of similar character, constitute parts of a common scheme or plan, and have given rise to criminal charges under the same statutes, the United States asks the Court to deny the defendant's Motion for Relief From Prejudicial Joinder.

THE FACTS AND CHARGES

The defendant is correct that the fraud scheme charged in the superseding indictment can be divided into two parts – the "merchandise fraud," which ran from March, 2003, through December, 2004, and the "Superbowl ticket" fraud, which began the following month, January, 2005, and ended with Deppe's arrest in February, 2005. Each part of the fraud scheme serves as the basis for both wire and mail fraud counts in the 16-count superseding indictment.

In the "merchandise fraud" portion of the scheme, Deppe arranged over the internet to sell electronic equipment and Rolex watches to individual customers. He then would

falsely tell the customers that he had shipped them the items and ask them to pay him by wire-transferring money to his bank account. When the customers later complained to Deppe that they had not received the merchandise for which they had paid, he gave them a series of false excuses, often claiming that there had been a shipping error, and he refused to refund their money. In this portion of the scheme, Deppe defrauded 27 victims out of approximately $115,000.

In the Fall of 2004, while he was still conducting the "merchandise fraud" portion of his scheme, Deppe began a business relationship with William Englehart, with whom he set up an internet sports memorabilia business. By this time, Deppe had been charged with larceny by the Worcester County DA's Office for the merchandise fraud, was under a court order (as part of his state pretrial release conditions) not to do business over the internet, and had been banned from ebay several times, so he used Englehart's ebay identity for the memorabilia business' sales.

Approximately two weeks before the February 6, 2005 Superbowl, Deppe suggested to Englehart that they use their memorabilia business to sell Superbowl tickets over ebay. Deppe falsely told Englehart that he had a contact at a ticket agency in Cambridge, Massachusetts, and that this person was willing to let him sell Superbowl tickets on commission. Through ebay advertisements that he wrote and phone calls he had with customers, Deppe persuaded 41 customers to pay approximately $255,460 for Superbowl tickets that he promised to obtain. Deppe instructed the customers to wire transfer the purchase price to Englehart, who then withdrew it from his bank account and gave it to

Deppe in cash, in several installments, because Deppe told Englehart that his contact at the ticket agency would only deal with him and would only take cash.[1]

The week before the Superbowl, Deppe promised several times that the tickets would be sent by overnight mail to the customers, but the customers never received them. Each day, he provided a false excuse for his failure to produce the tickets. He then promised to provide them personally to customers if they would meet him at the Orlando, Florida airport on Thursday, February 3, 2005, three days before the game. But when several customers tracked him down at the airport, he had no tickets. Deppe never provided the Superbowl ticket customers with the tickets for which they paid, and he never refunded their money.

## ARGUMENT

Because the 16 fraud counts were properly joined in the superseding indictment, and because trying these counts together will not prejudice Deppe, the Court should deny his motion.

### A.  The charges were properly joined

Joinder of multiple counts in an indictment is governed by Rule 8(a) of the Federal Rules of Criminal Procedure, which states that an indictment may charge multiple offenses in separate counts "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The First Circuit has stated that the factors it considers in determining

---

[1] Englehart has not been charged with a crime.

whether counts are properly joined include, "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." United States v. Edgar, 82 F.3d 499, 503 (1st Cir. 1996).[2] The First Circuit has recently noted that Rule 8(a) is "generously construed in favor of joinder." United States v. Melendez, 301 F.3d 27, 35 (1st Cir. 2002).

The facts alleged in the indictment here, measured against the Rule 8(a) standard, support the joinder of the two portions of Deppe's fraud scheme. Both the merchandise and Superbowl ticket portions of the scheme form the basis for charges under the mail and wire fraud statutes. They are also of the "same or similar character" and involve similar "modes of operation" in that: Deppe recruited all victims via the internet by promising to provide items he did not have; he told the victims how to make payments; he collected the victims' money and pocketed it; he never provided any of the items he claimed to be selling; when the victims asked where the items were, he initially provided a series of false excuses, each time promising that the items would arrive shortly; when the victims continued to pursue

---

[2] In Edgar, the First Circuit noted:

An earlier case in this circuit applied an arguably more stringent standard for the government to join two or more offenses under Rule 8(a). See United States v. Yefsky, 994 F.2d 885, 895 (1st Cir.1993) (finding proper joinder where there was "substantial identity of facts or participants" underlying two charged schemes, quoting United States v. Levine, 546 F.2d 658, 662 (5th Cir.1977)). . . .

Given our disposition of this issue, we need not decide whether Yefsky set a more rigid test for joinder of offenses than the language of Rule 8(a) warrants.

Id. 82 F.3d at 503, note 3.

4

him, Deppe ultimately stopped responding to phone calls or e-mail; and none of the victims received the items they had paid for or a refund.

Finally, the time frames of the two portions of the scheme support joinder. The merchandise fraud was a series of small frauds against individual victims running from March, 2003, through December, 2004. The evidence about the Superbowl fraud begins in the Fall of 2004, before the merchandise fraud ended, because this is when Deppe and Englehart created the company through which they offered the Superbowl tickets. The ticket fraud itself took place in January, 2005, just after the last of the merchandise scams. The timing, therefore, demonstrates that the Superbowl fraud was just the last, and largest, stage of Deppe's ongoing scheme to defraud victims over the internet by accepting money for items that he had no intention of providing.

The First and Tenth Circuits have both approved of joinder in fraud cases, even when the indictments joined different kinds of fraud schemes charged under different statutes. See Edgar, 82 F.3d at 504 (finding sufficient similarities between workers' compensation and insurance fraud schemes to permit joinder of those counts)[3]; United States v. Hollis, 971 F.2d 1441, 1456 (10th Cir. 1992) (finding that bank fraud and two mail fraud schemes were "of the same or similar character" where, in each case, defendants allegedly defrauded the victim of money through the submission of falsified documents).

---

[3] In Edgar, the court, however, concluded that the bankruptcy fraud charges were not properly joined, because they were brought under different statutes, there were different victims, the location was different, and the modes of operation were different. Id. at 503-04. Nonetheless, the court held that any error was harmless. Id.

5

In other kinds of cases, the First Circuit has found joinder proper where, as here, the crimes were similar in character or charged under the same statute. See, e.g., Melendez, 301 F.3d at 35-36 (in a drug case, statutory violations were substantially the same, resulting in overlap of legal issues justifying joinder); United States v. Mackey, 117 F.3d 24, 26 (1st Cir. 1997) (bank robbery charges from four robberies over the course of 10 months were properly joined as offenses "of the same or similar character"); United States v. Chambers, 964 F.2d 1250, 1251 (1st Cir. 1992) (six bank robberies properly joined where the counts, institutional victims, mode of operation and time period were similar); but see United States v. Randazzo, 80 F.3d 623, 628 (1st Cir. 1996) (joinder was not proper because adulterating or mislabeling shrimp is not "similar" to tax fraud, but the misjoinder was harmless).

Thus, the case law, language of Rule 8(a), and the facts in this case all support the joinder of the merchandise and Superbowl ticket frauds.

    B.    <u>There is no basis for severance</u>

Deppe argues not just that the joinder in this case was improper, but also that the court should exercise its discretion under Fed. R. Crim. P. 14(a) to sever the two portions of the fraud scheme. Defendant's Motion at 1. That rule provides: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Deppe's argument for severance here appears to be that the evidence from the merchandise fraud scheme will spill over and influence the jury's decision on the Superbowl fraud counts. Defendant's Memorandum at 2.

As the Tenth Circuit has succinctly stated, however, a district court is "not required to sever the counts simply because the cumulative effect of evidence of similar misconduct might potentially prejudice the defendant. The mere fact that a defendant may have a better chance for acquittal by separate trials of charges is not sufficient to require severance." Hollis, 971 F.2d at 1457. The First Circuit has noted that "[j]oinder of counts is often maintained even where evidence of one crime would not be admissible as substantive proof of the other." Mackey, 117 F.3d at 26. But the court, in Mackey, went on to conclude that where the evidence of one offense would have been admissible at the separate trial of the others, this "completely undermined any claim of unfair prejudice." Id. at 27; see also United States v. Stackpole, 811 F.2d 689, 693-94 (1st Cir. 1987) (Defendant is not prejudiced by joinder where, were the counts severed, substantially the same evidence would have been admitted in both resulting trials).

Here, the evidence of the merchandise fraud and ebay's decision, prompted by complaints from the victims, to ban Deppe from selling on its website, would be admissible at a separate Superbowl fraud trial to explain Deppe's motive in developing a business relationship with Englehart and using Englehart's ebay identity to advertise the Superbowl tickets. Furthermore, the merchandise fraud evidence would be admissible under Fed. R. Evid. 404(b) to show Deppe's intent to defraud in offering Superbowl tickets for sale and the absence of mistake or accident in failing to provide them. Deppe cannot, therefore, demonstrate that he will suffer any prejudice from the joinder. On the other hand, joinder will promote judicial economy by avoiding the need to have two trials featuring much of the

7

same evidence. Finally, the Court can minimize any possible prejudice from the joinder by instructing the jury that "each count charge[s] a separate offense and that each ha[s] to be considered separately, without allowing the verdict on one count to affect the verdict on any other count." Melendez, 301 F.3d at 36 (internal quotations omitted).

Because Deppe will not be prejudiced if he is tried once on all of the counts in the indictment, the Court should deny his request for severance.

## CONCLUSION

For the above reasons, the Court should deny the defendant's Motion For Relief From Prejudicial Joinder.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Adam Bookbinder
      Adam J. Bookbinder
      Assistant U.S. Attorney

Dated: January 19, 2006

### CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to counsel as identified on the Notice of Electronic Filing.

  /s/ Adam Bookbinder
Adam J. Bookbinder

Dated: January 19, 2006