UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |
| v. | ) Case No. 05-40007-FDS ) |
| MICHAEL R. DEPPE, | ) ) |
| Defendant. | ) ) ) |

## GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan, and Assistant United States Attorneys Adam Bookbinder and Seth Berman, respectfully submits this trial brief to assist the Court during the upcoming trial of the above-captioned matter, which is scheduled for April 24, 2006. The trial is expected to last for approximately two weeks. The defendant is represented by Stephen Rappaport, Esq.

There are no outstanding discovery issues.

### Summary of Facts

The defendant Michael R. Deppe ("Deppe") conducted a series of fraudulent transactions primarily over the Internet website eBay from March 2003 through February 2005. In the first part of the scheme, which ran from March 2003 through December 2004, Deppe collected approximately $115,000 from customers for various kinds of merchandise that he never provided. As a result of the complaints arising from these fraudulent transactions, eBay shut down Deppe's user accounts. In addition, Deppe was charged by the Worcester County D.A.'s Office in January and March 2004 with 19 counts of larceny over $250. One condition of his

state pretrial release was that he not use his computer for any activity other than school work.[1]

Starting in the fall of 2004, Deppe came in contact with William Engelhart, an eBay user looking to start an Internet-based sports memorbilia company. In contravention of the court order that banned Deppe from conducting transactions on the Internet, Deppe offered to help Englehart create and manage the sports memorabilia business under the name Aceprosports. For a couple of months, Deppe and Englehart together successfully sold sports memorabilia, allowing Aceprosports to become an eBay "powerseller" with a 99% positive customer feedback rating, key measures used by many eBay users to judge the trustworthiness of an eBay seller. This brief, successful, sports memorabilia partnership was instrumental to the next phase of Deppe's fraud scheme, because he used it to earn Englehart's trust and create a positive reputation on eBay for Aceprosports.

In late January 2005, Deppe took advantage of the trust Englehart had placed in him and the eBay reputation Aceprosports had developed to perpetrate the largest part of his fraud scheme. Approximately two weeks before the February 6, 2005 Superbowl, Deppe suggested to Englehart that they sell Superbowl tickets through Aceprosports. Deppe told Englehart that he had a contact at a reputable ticket broker – Out of Town Tickets, in Cambridge, Massachusetts – who would pay him a commission for selling Superbowl tickets.

Through eBay advertisements that Deppe wrote and phone calls he had with customers, Deppe persuaded 41 customers to pay a total of $255,460 for Superbowl tickets he claimed he could sell. The first few ticket buyers paid through Paypal, ebay's on-line payment service. But

---

[1] The state charges against Deppe were dismissed in the spring of 2005, after Deppe was indicted federally in this matter.

Paypal cut off Aceprosports after learning, from Englehart, that Deppe and Englehart did not yet have the tickets they were selling. At that point, Deppe directed that customers pay by wire transfer or bank check to Englehart's bank account.

Deppe told Englehart that his contact at Out of Town Tickets required that all payments be made only in cash and that the contact would deal only with Deppe. Consequently, Englehart withdrew $230,000 from his bank account and gave it to Deppe in cash, in several installments. In return, Deppe signed a handwritten receipt for $83,000 (for one of the installments) and later gave Englehart a fabricated, typed receipt for $183,000, allegedly signed by "Jonathon Cohen" of Out of Town Ticket Agency.

The week of the Superbowl, Deppe promised several times that the tickets would be sent to the customers, but the customers never received them. Deppe provided a string of excuses, and ultimately said that he would personally deliver the tickets to the customers when they arrived in Florida , where the Superbowl was being held. Deppe then bought himself flights and Superbowl tickets through an eBay website (notably not from Out of Town Tickets, his alleged source for the Superbowl tickets he was selling), and flew down to Florida for the Superbowl.

When several customers tracked him down at the Orlando airport, Deppe had no tickets. Deppe told customers several different stories, including that he had given the money to the ticket agency but had not yet received the tickets. He also told several customers that he still expected to receive the tickets, and promised to deliver them before the game.

On February 3, 2005, concerned that he had unwittingly been part of a scam, Englehart called Sheldon Cohen, the owner of Out of Town Ticket Agency. Cohen told Englehart that he did not know who Michael Deppe was and that Deppe had no arrangement to buy Superbowl

tickets from Out of Town Tickets.[2]  Cohen also said that there is no "Jonathon Cohen" at Out of Town.  At this point, Englehart and several of the victims contacted law enforcement.  Deppe was charged by complaint in this case and arrested, at his Florida hotel the following day, Friday, February 4, 2005, two days before the Superbowl.  He never provided a single one of his customers with a Superbowl ticket or a refund.

## PROCEDURAL POSTURE

On March 6, 2006, Deppe entered a plea of guilty to counts 1-8 and 13-14 of the superseding indictment – the counts relating to the 2003-04 merchandise fraud portion of the scheme.  Consequently, the disputed counts at the upcoming trial all relate to the 2005 Superbowl ticket fraud.

## ANTICIPATED EVIDENCE AT TRIAL

The evidence at the trial will consist of the testimony of Englehart, each of the victims named in the indictment, and several other witnesses regarding Deppe's participation in the scheme to defraud.  The government will also introduce several documents, records, receipts, tickets, and other items proving Deppe's participation in the scheme.

Englehart will testify that Deppe proposed to him the idea of selling Superbowl tickets in January 2004.  Deppe told Englehart that he could obtain the tickets from Out of Town Tickets, and that Out of Town Tickets would pay him a commission after the Superbowl, provided that he paid for the tickets in advance, in cash.  Englehart will testify that he and Deppe agreed that all the money would be wired into Aceprosport's bank account (which Englehart controlled), and

---

[2] After reviewing Out of Town's records, Cohen later noted that Deppe had bough a few tickets through the agency to earlier sporting events.

that Englehart would give the cash to Deppe so that Deppe could pay for the tickets. Englehart will also testify that on one of the occasions when he gave Deppe cash for the Superbowl tickets, Deppe signed a handwritten receipt for the cash. On another occasion, Deppe gave Englehart what purported to be a receipt from Out of Town Tickets to Deppe signed by Jonathon Cohen demonstrating that Deppe had given cash to Out of Town Tickets to pay for the Superbowl tickets. Englehart will also say that Deppe refused to let him meet Deppe's contact at Out of Town Tickets, claiming that the contact would deal only with Deppe. Englehart will also testify that when he began to suspect that Deppe was defrauding the ticket purchasers, he gave the ticket purchasers information about exactly when Deppe would be arriving at the Orlando, Florida airport, and warned them that Deppe might be attempting to scam them.

Sheldon Cohen of Out of Town Tickets will also testify. He will tell the jury that though he has never met Michael Deppe, a review of Out of Town Ticket records reveal that Deppe had an account at Out of Town Tickets and had previously purchased football tickets from Out of Town Tickets. Cohen will further testify that he never had any agreement with Deppe to sell Deppe Superbowl tickets, had never discussed such a deal with Deppe, and could not have purchased the number of tickets that Deppe sold. Moreover, he will testify that the receipt that Deppe provided to Englehart purportedly from Out of Town Tickets was a forgery. In fact, it is not on Out of Town Tickets stationary, and there is no Jonathon Cohen at Out of Town Tickets.

Several Superbowl ticket customers will also testify. They will testify that they spoke to Deppe on the telephone, and in some instances confronted him in person regarding the ticket sale scheme. They will testify that Deppe appeared to be attempting to avoid them, and that he provided different excuses to explain why he didn't have the tickets, sometimes claiming that he

5

would still get them, sometimes implying that it was Englehart's fault, and sometimes suggesting that he was scammed by the ticket broker.

The government will also produce documents and testimony concerning the interstate telephone calls, wire transfers, and mailings that serve as the basis for the mail and wire fraud counts in the superseding indictment. The government will also present testimony and other evidence regarding Deppe's history with Ebay, and some documents found on the computer recovered from the car in which Deppe was riding at the time of his arrest.

In addition, as described in more detail in the government's Motion in Limine, the government will seek to introduce evidence concerning the first part of the scheme, the 2003-2004 merchandise fraud, including evidence concerning the counts to which Deppe has already pled guilty. Evidence of Deppe actions and admissions regarding the 2003-2004 portion of the fraud scheme is admissible because is part of the scheme to defraud as described in the Indictment. Moreover, even if it were somehow considered as prior bad act evidence, outside the scope of the Superseding Indictment, it would still be admissible pursuant to Federal Rule of Criminal Procedure 404(b) because it is evidence of Deppe's opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident during the course of the 2005 Superbowl ticket fraud.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   /s/ Seth P. Berman
      ADAM BOOKBINDER
      SETH P. BERMAN
      Assistant U.S. Attorney

Dated:      March 31, 2006

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

                                             /s/ Seth P. Berman
                                             Seth P. Berman

Dated:     March 31, 2006